UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA D. DELK,<br><br>    Plaintiff,<br><br>    v.<br><br>OCWEN FINANCIAL CORPORATION, et al.,<br><br>    Defendants. | Case No. 3:17-cv-02769-WHO<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 21 |

**INTRODUCTION**

Plaintiff Sandra Delk seeks to hold defendants Ocwen Financial Corporation ("OFC") and Ocwen Loan Servicing, LLC ("OLS") (collectively referred to in the complaint as "Ocwen") accountable for certain promises she believes Ocwen made to her during negotiations over her assumption of a mortgage held by her late brother. She claims that Ocwen reneged on their agreement when she attempted to sell the property nearly a year after assuming the mortgage.

Ocwen moves to dismiss the complaint because Delk's "erroneous belief" does not entitle her to relief; also, the claims against OFC for failure to state a claim. Ocwen's motion is GRANTED with respect to the claims against OFC because Delk fails to allege sufficient facts against it as well as to the claims for negligent and intentional infliction of emotional distress because they are not plausibly pleaded. It is DENIED as to the other eight claims against OLS. She should file an amended complaint, if any, within 20 days.

# BACKGROUND[1]

Delk's brother, Steven Harold Moorman owned 1509 Mira Vista Court, Antioch, CA 94509 (the "property") with his domestic partner, George Eli Stevens. First Am. Compl. ¶ 6 ("FAC")(Dkt. No. 18). The property was subject to a mortgage held by Ocwen.[2] FAC ¶ 13. Stevens filed for Chapter 7 bankruptcy, which concluded with a discharge of debt on January 12, 2012. FAC ¶ 6.

On February 28, 2012, Moorman, Stevens and OLS entered into a shared appreciation loan modification agreement ("SAM"). FAC ¶¶ 14-15; *see* SAM (MTD, Ex. A, Dkt. No. 21-1). Effective April 1, 2012, the SAM reduced the principal of the mortgage to $323,615.22 (referred to as the "new principal balance"). FAC ¶ 15; *see also* SAM ¶2A. The SAM also deferred $176,364.22 of the new principal balance (the "deferred principal balance"), which was to be "treated as a non-interest bearing principal forbearance for which the mortgagee was not obligated to make interest or monthly payments." FAC ¶ 15; *see also* SAM ¶ 2B. It stated that the deferred balance was to be forgiven in three equal installments over three years if the mortgagee did not "default on three or more monthly payments." FAC ¶ 15; *see also* SAM ¶ 2C. The remainder of the balance of $147,250 was to have its interest reduced to 2.5 percent. FAC ¶ 15; *see also* SAM ¶

---

[1] OLS submitted a request to judicially notice the Deed of Trust, the Grant Deed, and the Petition to Enforce Assumption of Mortgage Contract. *See* Request for Judicial Notice, Exs. 1, 2, 3 (Dkt. No. 22). Delk did not object. Because these documents are appropriate for judicial notice under Federal Rule of Evidence 201, its request is GRANTED. It also attached to its motion two documents referenced by Delk in her complaint—the SAM and Linda McGarvey's July 11, 2014 Email. MTD at 3-4; *see id*. Exs. A (SAM) and B (7/11/14 McGarvey Email)(Dkt. Nos. 21-1, 21-2). It states that these documents should be incorporated by reference because Delk referred to them extensively in her complaint. "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Delk argues that neither document has been properly authenticated and the email is only one of several communications between her and Ocwen and is therefore not "central" to her claims. Opp'n at 5–6 (Dkt. No. 23). Because Delk does not seriously question the authenticity of the SAM and the complaint "necessarily relies" on it, it will be incorporated by reference. But because her allegations cite to numerous communications between the parties, the same cannot be said of the email, so it will not be incorporated. Delk attached a declaration to her opposition, *see* Wilcox Decl. (Dkt. No. 23-1), to which Ocwen objected because it contains hearsay and information that was not incorporated by reference. Reply at 2–3 (Dkt. No. 24). I do not consider the Wilcox declaration in my analysis.

[2] This Order references Ocwen in accordance with Delk's allegations, with the understanding that OLS and OFS are separate entities.

2D.

In 2012, Moorman was also involved in Chapter 23 Bankuptcy proceedings, and the SAM survived the bankruptcy. FAC ¶ 16. On September 12, 2012, Stevens died and the property passed to Moorman under the right of survivorship. FAC ¶ 17. On November 26, 2012, Moorman died, leaving the property to his two sisters and his mother. FAC ¶ 18. Delk became the sole beneficiary after Moorman's other sister and mother disclaimed their inheritance. *Id.* On July 13, 2013, Delk was appointed the Administrator of Moorman's estate and letters of administration were issued. FAC ¶¶ 8,18. The Moorman estate, which was insolvent, missed several mortgage payments. FAC ¶ 32.

Before assuming the mortgage, Delk sought to ensure that she would still have the benefit of the SAM, particularly the forgiveness of the balance of $176,364.22, after three years of payments. FAC ¶¶ 19-20. On August 6, 2013, Delk's attorney, Randy J. Harvey, contacted an Ocwen representative, "Pooja," who stated that the SAM would not change and that Delk would have the benefit of the loan forgiveness. FAC ¶ 19. Delk's attorney sent a request for "assumption and other documents" by fax per Pooja's instructions. *Id.* On August 13, 2013, Delk sent a letter to Ocwen indicating that Delk wished to assume the mortgage subject to the SAM but would let the property go into foreclosure if she was unable to assume the mortgage "subject to the SAM (including entitlement to forgiveness of the Deferred Balance)." FAC ¶ 20.

On January 14, 2014, Delk's attorney contacted a representative in Ocwen's Bankruptcy department, "Jerry," who stated that Ocwen "would transfer the loan to the beneficiaries in its current modified condition (including entitlement to forgiveness of the Deferred Balance) without any changes." FAC ¶ 21. The same day, he sent a letter to Ocwen seeking written confirmation of the conversation with Jerry and reiterated that Delk would not assume the mortgage unless she would receive the loan forgiveness. *Id.* On February 3, 2014, Delk's attorney sent another letter to Ocwen that Delk would not assume the mortgage unless she was receiving the benefits of the SAM, and requested a confirmation of the statements by the Ocwen representatives. FAC ¶ 22.

On February 10, 2014, Delk received a letter from Ocwen stating, "Pursuant to the receipt of your correspondence, we contacted the concerned department and were notified that as per the

3

final truth in lending document, the aforementioned property is not assumable." FAC ¶ 23. But on March 3, 2014, Delk received a "Family Transfer Package," dated February 27, 2014, directing Delk to complete paperwork in order to assume the mortgage and title of the property. FAC ¶ 24. The next day, Delk's attorney sent a letter to Ocwen stating that Ocwen had previously sent a letter informing her that she could not assume the loan. FAC ¶ 25. The letter noted the inconsistent positions and asked Ocwen to answer five questions:

> A. What is the current balance on the original Loan Number 7092961874?
> B. What is the current balance on the modified Loan Number 7092961874?
> C. Will Ocwen allow the family member heirs to assume Loan Number 7092961874 as it is modified?
> D. What is the effect if a family member plans to occupy the residence within the next few years, but leases the property in the interim?
> E. If there are no heirs to inherit the property, causing the house to escheat to the State of California, would Ocwen take a deed in lieu of foreclosure from the state administrator to clear the property off the estate?

FAC ¶25.

On June 16, 2014, having heard no response to the previous letter, Delk sent another letter to Ocwen stating that it was legally bound to allow the property to transfer to Moorman's heirs and that if Delk could not assume the mortgage with the terms of the SAM, she would disclaim the property and request conveyance of a deed in lieu of foreclosure. FAC ¶ 26. On July 1, 2014, Ocwen sent Delk another "Family Transfer Package" with a mortgage principal amount of $339,000, not the new principal balance of the SAM. FAC ¶ 27.

In July 2014, Delk was informed that Linda McGarvey, an agent of OLS, was handling the mortgage. FAC ¶ 28. On July 2, 2014, Delk sent McGarvey a letter stating that the principal set forth in the "Family Transfer Package" was based on the unmodified mortgage, without the SAM, and requesting that the amount be corrected, repeating that Delk would not assume the mortgage if it was not subject to the SAM, including reduction of the principal and entitlement to forgiveness of the deferred balance. FAC ¶ 29. Having heard no response, Delk sent another letter on July 10, reiterating her position as stated in the previous letter and specifically noting that Delk would disclaim the property on July 16, 2014 if Ocwen did not agree that the assumption would be

4

subject to the terms of the SAM, including entitlement to forgiveness of the deferred balance. FAC ¶ 30.

On July 11, 2014, McGarvey sent an email which stated that "[Delk] would be assuming this loan at the current terms, including the current unpaid principal balance of $143,227.30." FAC ¶ 31. McGarvey also indicated that she "ha[d] requested re-instatement figures for the account." *Id*. Delk asserts that the $143,227.30 figure reflected the principal with the subtraction of the deferred balance. *Id*.

On July 14, 2014, Delk emailed McGarvey four questions:

> A. The heir will not be living in the house right away, she doesn't retire for a while, will that effect [*sic*] the mortgage?
> B. The catch up on the unpaid mortgage shouldn't include any late fees since this is an estate, do you want cashier's check for the amount once you determine the amount?
> C. Will the house insurance be paid as part of the mortgage?
> D. What is the actual amount of the catch up payment?

FAC ¶ 33. On July 17, 2014, McGarvey responded:

> A. This will not affect the mortgage. We can still allow the Family Transfer.
> B. I am waiting on the re-instatement figures. I do not have any insight on the waiver of late fees in this situation.
> C. The home insurance will continue to be paid as part of the escrow payment. We still require a copy of the declaration page listed [*sic*] Ms. Delk as the insured.
> D. I will provide this as soon as the figures are presented to me.

FAC ¶ 34.

On July 29, 2014, Delk sent Ocwen the completed forms required for assuming liability of the mortgage (the "Assumption") and included a check in the amount of $15,590.92, which brought the account current. FAC ¶ 36. Since the Assumption, Delk has fully complied with the requirements, including timely making all payments. FAC ¶ 37.

After about a year, Delk sought to sell the property. FAC ¶ 39. She found a buyer who made an offer that would have benefited Delk with a net profit of $114,813. FAC ¶ 40. When the sale was in escrow, Ocwen demanded a full payment of the deferred balance, even though more than three years had passed. FAC ¶ 41. The buyer then backed out of the sale. FAC ¶ 42.

Ocwen subsequently notified Delk that it was rescinding the Assumption and transferring

the mortgage back to names of Moorman and Stevens, and that it would not refund any money paid by Delk in connection with the assumption. FAC ¶ 43. Delk asserts that she has paid at least $43,983.57 towards the property, including the lump sum payment, the ongoing mortgage payments and payments for maintenance, repairs, and insurance. FAC ¶ 45.

On April 12, 2017, Delk commenced this action in the Superior Court of California, Contra Costa county, which defendants removed on May 12, 2017. Notice of Removal ¶ 1 (Dkt. No. 1). She filed an amended complaint on June 9, 2017, asserting causes of action against for: (i) breach of contract against OLS, FAC ¶¶ 50-55; (ii) breach of covenant of good faith and fair dealing against OLS, FAS ¶¶ 56-64; (iii) promissory estoppel against Ocwen, FAC ¶¶ 65-71; (iv) unjust enrichment against Ocwen, FAC ¶¶ 72-76; (v) fraud in the inducement against Ocwen, FAC ¶¶ 77-84; (vi) unfair business practices against Ocwen, FAC ¶¶ 85-87;(vii) interference with contractual relations against Ocwen, FAC ¶¶ 88-93; (viii) intentional interference with contractual relations against Ocwen, FAC ¶¶ 94-100; (ix) intentional infliction of emotional distress against Ocwen, FAC ¶¶ 101-105; and (x) negligent infliction of emotional distress against Ocwen, FAC ¶¶ 106-110. On June 23, 2017, Ocwen moved to dismiss all of the claims. Mot. to Dismiss ("MTD")(Dkt. No. 21).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I. CLAIMS AGAINST OFC

Ocwen argues that Delk's claims against OFC should be dismissed because there are no facts specifically alleged against OFC and it is not sufficient to "lump" the two companies together simply because OFC is OLS's parent company. MTD at 4. Delk contends that OFC's status as parent company of OLS is not the basis of OFC's liability; rather, specific allegations are lodged against OFS, for example, the allegation that McGarvey was acting on behalf of both OFS and OLS. *Id*. at 6-8. She further asserts that her first and second claims for relief in her FAC are directed against OLS because it entered into the SAM with her, and the remaining claims are alleged against both because she believes OFC and OLS acted in concert. *Id*. at 8. She also states that she does not know who owns the mortgage at this time, but plans to name that entity when she obtains that information. *Id*.

Delk's allegations against OFC are insufficient. Generally, "a parent corporation … is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). But, the corporate veil can be pierced if the court finds that the parent company was somehow involved in the wrong doing. *Id.* at 62-63. She has not included sufficient facts that OFC and OLS were

7

acting in concert and does not otherwise allege specific acts or omissions on the part of OFC. Ocwen's motion to dismiss the claims against OFC is GRANTED with leave to amend in the event that Delk discovers facts sufficient to state a cause of action against OFC.

## II. BREACH OF CONTRACT

OLS moves to dismiss Delk's breach of contract claim because it is based on Delk's "incorrect *impression* that she would reap the benefit of Deferred Principal Forgiveness" and it was within its right to call the deferred balance due at the time of the sale. MTD at 6–8. Under California law, a breach of contract claim requires: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Miles v. Deutsche Bank Nat'l Trust Co.*, 236 Cal. App. 4th 394, 402 (Cal. Ct. App. 2015).

Delk has plausibly pleaded a breach of contract claim. She alleges that the parties entered into an agreement, which is not disputed by Ocwen, and that she performed her duties under the contract when she paid $15,590.92 to Ocwen and made timely monthly payments, which is also not in dispute. She claims that Ocwen breached the agreement by demanding the deferred balance, which she believed would be forgiven under the terms of the SAM.[3] And she alleges damages by stating that she lost the benefit of selling the property, as she would owe more money if she went through with the sale.

It is too early to determine whether Delk was operating under a false impression when she understood that assuming the mortgage under the SAM included forgiveness of the deferred principal balance. She points to communications with OLS representatives, who stated that the loan would be transferred in its "current modified condition without changes." That the parties disagree over what this meant does not warrant the dismissal of Delk's breach of contract claim-- rather, it justifies the contrary conclusion.[4]

---

[3] She also alleges that OLS breached the contract when it rescinded the Assumption agreement. FAC ¶ 54. OLS does not address this allegation in its motion. *See* Opp'n at 9.

[4] The factual disputes over the meaning of OLS's representations alone justify denying OLS's motion to dismiss Delk's breach of contract claim. But she also argues that OLS waived its rights under paragraph 2(C) of the SAM because the missed payments accrued before she assumed the

8

1    OLS also highlights that the SAM included a provision notifying Delk that OLS could be
entitled to an additional payment, the "shared appreciation amount," not to exceed the deferred
principal balance, if the property securing the note increased in value. MTD at 8–9; *see also* SAM
¶ 3. And it argues that the $176,364.22 demand could have been based on the shared appreciation
amount, especially since Delk admitted that she improved the property. MTD at 9. This purely
speculative argument does not defeat Delk's claim.

Accepting Delk's allegations as true, Ocwen's motion to dismiss Delk's breach of contract
claim is DENIED.

## III. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM

"The covenant of good faith and fair dealing is implied in every contract and requires that neither party do anything that will injure the right of the other to receive the benefits of the contract." *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal. App. 4th 1306, 1332 (2009). OLS argues it did not breach the covenant of good faith and fair dealing because it only enforced the expressed terms of the SAM and it was not its duty to inform Delk if the SAM did not fulfill her criteria. MTD at 9–10.

Delk has stated a claim for breach of the implied covenant of good faith and fair dealing, which can be satisfied by a defendant committing an act that deprives the plaintiff of the benefit of the contract. Delk alleges that OLS violated the covenant of good faith when its representatives "entice[d]" her to assume the mortgage under the belief that the principal balance was $143,000, and then deprived her of that benefit when it demanded payment. FAC ¶ 58. She repeatedly sought confirmation from OLS, and finally received an answer, that the total debt was $143,227.30, an amount that accurately reflected the reduction in principal of the loan modification. In reading the facts of the complaint most favorably to Delk, Ocwen knew what Delk expected from the SAM, and led her to believe she was going to reap the benefit of the SAM with loan forgiveness, but then denied the benefit when she attempted to sell the property nearly a year later. These allegations are sufficient to state a claim for breach of the covenant of good faith loan under the SAM. *See* Opp'n at 9–10.

and fair dealing.

**IV.　PROMISSORY ESTOPPEL**

Under California law, a promissory estoppel claim has four elements: (i) a promise with clear and unambiguous terms; (ii) the plaintiff's reliance on the promise; (iii) that reliance must be "both reasonable and foreseeable"; and (vi) the plaintiff must suffer an injury due to her reliance. *Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1007 (2016).

Ocwen argues that Delk's claim must fail because neither defendant made a "clear and unambiguous promise" to forgive the deferred principal loan balance. MTD at 10. It insists that she was not entitled to the loan forgiveness because three or more payments were missed. *Id*. at 11. It further asserts that Delk's questions to OLS were ambiguous and "open to subjective interpretation." *Id*. It then proceeds to offer its interpretation of the questions and answers.

Delk has sufficient pleaded a promissory estoppel claim. She made her position clear and repeatedly sought clarification from Ocwen that she would be assuming the loan under the SAM, including the deferred principal forgiveness. McGarvey's representation that "[Delk] would be assuming this loan at the current terms, including the current unpaid principal balance of $143,227.30[,]" is sufficiently clear and unambiguous. In response, Ocwen points to remainder of the email, in which McGarvey also told Delk to review the terms of the SAM and specifically warned her that the amount due at payoff will depend on the payment history of the account. But since Delk put Ocwen on notice that she would not assume the loan without the forgiveness, it is plausible that her reliance was reasonable and foreseeable. And she sufficiently alleges damages as a result of her reliance. Ocwen's arguments pertain to factual disputes to be decided at a later time. Its motion to dismiss Delk's estoppel claim is DENIED.

**V.　UNJUST ENRICHMENT**

Ocwen first urges the court to reject a stand-alone unjust enrichment claim and then argues that the benefit Ocwen received was not unjust. MTD at 12–13. As interpreted by the Ninth Circuit and the California Court of Appeal, unjust enrichment occurs when one party receives benefits at the expense of another, and that the circumstances are such that it is unjust for the benefiting party to retain the benefit. *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 684 (9th Cir.

2009); *First Nationwide Sav. v. Perry,* 11 Cal. App. 4th 1657 (Cal. Ct. App. 1992).

Delk argues that she had no contractual duty to pay anything to Ocwen prior to assuming the mortgage. And she emphasized that she would only assume the mortgage if it was subject to the SAM, *including* the forgiveness of the deferred principal. Ocwen then promised that the mortgage would be subject to the terms of the SAM. She then paid Ocwen $15,590.92 to cover the payments missed by the Moorman estate. After Ocwen accepted this check and nearly a year's worth of monthly mortgage payments, it reneged its promise but retained all of Delk's payments. She claims that Ocwen "has been unjustly enriched in the amount of $43,983.57" based on these payments and improvements she made to the property. In reply, Ocwen insists that the loan payments were made "in exchange for the benefit of no foreclosure of her interest in the Property." Reply at 6.

Delk has stated a cause of action for unjust enrichment. She alleges that Ocwen induced her to assume the mortgage under the pretense that she would benefit from the loan forgiveness. Operating under this belief, she assumed the loan and made a lump sum payment of $15,590.92. She subsequently made monthly payments and improvements to the home, which she argues has unjustly benefited Ocwen. Ocwen's arguments again pertain to disputed facts, and not Delk's ability to state a claim. Its motion to dismiss her unjust enrichment claim is DENIED.

## VI. FRAUD IN THE INDUCEMENT

The elements of fraud are: (i) "a misrepresentation (false representation, concealment, or nondisclosure)"; (ii) the defendant having knowledge of the falsity; (iii) the defendant having the intent to defraud, such as the intent to induce the plaintiff to rely on the falsity; (iv) the plaintiff justifiably relying on the falsity; and (v) the plaintiff suffering damages as a result. *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). "When a plaintiff alleges fraud in the inducement, the plaintiff is asserting that [she] understood the contract [she] was signing, but that [her] consent to the contract was induced by fraud." *Brown v. Wells Fargo Bank, NA*, 168 Cal. App. 4th 938, 958 (Cal. Ct. App. 2008). When a plaintiff's consent was induced by fraud, the contract is voidable and can be rescinded by the plaintiff to avoid her obligation. *Duick v. Toyota Motor Sales, U.S.A., Inc.*, 198 Cal. App. 4th 1316, 1320–21 (Cal. Ct. App. 2011).

11

Fraud claims "must be alleged with sufficient specificity to allow [a] defendant to understand fully the nature of the charge made." *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz*, 57 Cal. App. 3d 104, 109 (Cal. Ct. App. 1976). "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (Cal. Ct. App. 1991).

Ocwen argues that Delk's fraud claim "fails on each prong." MTD at 13. First, it insists there is no fraudulent representation because Delk has not alleged that OLS represented that "she could obtain the SAM *with the Deferred Principal Forgiveness*." *Id*. (emphasis added). Second, it contends that OLS did not induce Delk to assume the loan, she sought to assume it on her own accord. And third, OLS never offered anything outside the terms of the SAM. It then attacks the FAC's specificity, stating, "there are no allegations in the FAC that a specific person, at a specific date and time, told Plaintiff that *she would still be eligible for the forgiveness*." MTD at 14 (emphasis added).

Delk's complaint is alleged with the requisite specificity. She identified the names of the OLS representatives, their authority to speak, to whom they spoke, what they said, and when they said it. *See Tarman*, 2 Cal. App. 4th at 157. Ocwen's true issue lies in its position that there was no "misrepresentation," and so there can be no fraud. OLS never specifically told Delk that "she would be eligible for the forgiveness[;]" however, one representative told her that she would assume the loan in its "current modified condition" and McGarvey told her she "would be assuming this loan at the current terms, including the current unpaid principal balance of $143,227.30." It was reasonable for Delk to infer that McGarvey's representation meant that Delk would be assuming the loan subject to the forgiveness. Otherwise, the unpaid principal balance would have been closer to $320,000.[5]

---

[5] Part of the problem here is that the SAM does not use the term "unpaid principal balance." *See* SAM ¶ 2 (Dkt. No. 21-1 at 3). It uses the following terms: "new principal balance," equal to $323,614.22; "deferred principal balance," equal to $176,364.22; and "interest bearing principal balance," equal to $147,250.00. *Id*.

12

Accepting Delk's allegations as true, her belief was even more reasonable given that she had repeatedly emphasized her unwillingness to assume the mortgage without the forgiveness. OLS knew her position. Moreover, at the time of McGarvey's email, the estate had already missed the mortgage payments that would disqualify the loan for forgiveness, so OLS knew *or should have known* whether it would exercise its right not to forgive the deferred principal balance. OLS either "misrepresented" the "current unpaid principal balance," or it omitted the material fact that the "current unpaid principal balance" did not include the "deferred principal balance," which could be due upon sale.[6] Either way, it is fair to say, at the pleading stage, that OLS misled Delk into believing that she would be assuming the loan subject to forgiveness. From her allegations, it is reasonable to infer that OLS had the intent to induce Delk to rely on the representation that "the current unpaid principal balance [was] $143,227.30" in determining whether to assume the loan. Because she allegedly made her position clear and logically assumed that the quoted figure aligned with her position, her reliance was also justifiable.

Delk has plausibly alleged a fraudulent inducement claim with the requisite specificity.[7]

## VII. UNFAIR BUSINESS PRACTICES

Under California Business Professional Code § 17200, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. A practice can be deemed "unfair" even if it is not unlawful, and the language is meant to be broad to permit courts to address unfairness when they see fit. *See Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1152 (Cal. Ct. App. 2000). Similarly,

---

[6] "There are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336, 60 Cal. Rptr. 2d 539 (1997). McGarvey's nondisclosure could fall under the circumstances articulated in (2), (3), or (4).

[7] Ocwen argues that the claim "fails on each prong," but it does not specifically challenge Delk's damages. She has sufficiently alleged damages stemming from the misrepresentation, at least in the amount of the lump sum payment and the ongoing monthly payments.

> A fraudulent business practice is one that is likely to deceive members of the public. A claim based upon the fraudulent business practice prong of the UCL is distinct from common law fraud. A common law fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for relief under the UCL. This distinction reflects the UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices. A fraudulent business practice may be accurate on some level, but will nonetheless tend to mislead or deceive. A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL.

*Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 252–53 (Cal. Ct. App. 2011)(internal quotation marks, citations, and alterations omitted).

Ocwen argues that it did not engage in unlawful, unfair, or fraudulent activity and did not deceive Delk about the principal forgiveness simply because Delk wrongfully assumed that the mortgage would have the deferred principal forgiven. MTD at 15. It argues that unfair business practices have to be "tethered to a statutory or regulatory provision[,]" and since Ocwen is not alleged to have violated a statute, Delk's claim fails. *Id*. That is true for the unlawful prong of the UCL, but not the unfair or fraudulent prongs, as shown above. "The statutory language referring to 'any unlawful, unfair *or* fraudulent' practice (italics added) makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law. … In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." *Schnall*, 78 Cal. App. 4th at 1153.

Delk has stated a claim under the UCL's unfair and fraud prongs. Even if she had not met the pleading standard for fraudulent inducement, her claim under the UCL would still pass muster. *See Boschma*, 198 Cal. App. 4th at 253 ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL.").

## VIII. INTERFERENCE WITH CONTRACTUAL RELATIONS

Ocwen argues that it did not interfere with Delk's contractual relationships because nothing it did prevented her from selling the property and it was simply exercising its rights under

14

the SAM. MTD at 15. For Delk to state a claim for intentional interference with contractual relations, she must allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *United Nat. Maintenance, Inc. v. San Diego Convention Center, Inc.*, 766 F.3d 1002, 1006 (2014).

OLS contends that Delk's claim must fail because she cannot show that "OLS (or OFC) took any intentional acts that were unjustified." Reply at 7. It argues that there are "many reasons under the SAM" justifying its demand for the deferred principal at the time of sale: first, it was due on sale; second, there was no forgiveness because the loan had been in default; and third, it was entitled to shared appreciation of the value. MTD at 16. It also insists that Delk's damages are too speculative. *Id.*

Delk need not allege that OLS "literally induce[d] a breach of contract[.]" She can state a claim by "offer[ing] credible evidence that [OLS's] intentional actions resulted in greater expense or burden on the performance of its contractual obligations with third parties." *Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1205 (C.D. Cal. 2001). She need not *prove* anything at the motion to dismiss stage, she needs only to plausibly allege facts. *See* MTD at 16 (citing cases disposing of claims on motions for summary judgment); Reply at 7 (same).

Delk states enough facts in her complaint to plausibly allege a claim for intentional interference with contractual relations. She states that (1) a valid contract existed between herself and a prospective buyer; (2) Ocwen knew of the contract; (3) Ocwen intended to or knew that Delk would be unable to perform under the contract if it demanded payment of the deferred principal balance; (4) Delk was unable to perform under the contract; and (5) she suffered

15

damages as a result.[8]

## IX. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

For this tort, Delk must plead with sufficiently plausible facts: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Youst v. Longo*, 43 Cal. 3d 64, 71 n.6 (1987).

OLS again focuses on its position that it was only enforcing its contractual right to be paid the Deferred Principal Balance upon sale, so it cannot be held liable for intentional interference. MTD at 17. But this argument ignores Delk's contention that OLS waived its right to enforce this provision of the SAM. Reading the complaint in the light most favorable to Delk, she has plausibly pleaded that OLS knew the sale of the property would benefit Delk economically, it intentionally sought to disrupt that relationship, the relationship was actually disrupted, and it resulted in Delk's economic harm.

## X. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The elements of the tort of intentional infliction of emotional distress ("IIED") are: (i) "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress"; (ii) the plaintiff "suffering severe or extreme emotional distress"; and (iii) "actual and proximate causation of the emotional distress by the defendant's outrageous conduct[.]" *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). For a defendant's actions to be "outrageous," its actions must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.*

Delk contends that Ocwen acted with malicious intent when it denied her the benefits of the SAM, specifically the deferred balance forgiveness, and ultimately rescinded the assumption

---

[8] It is also too early for Ocwen to attack Delk's alleged damages. *See* MTD at 16 (arguing damages are too speculative); Reply at 8 (challenging Delk's alleged loss profit).

1 agreement. FAC ¶109-10. She alleges that she "suffered mental anguish and severe emotional distress." FAC ¶ 49. In her opposition, she adds that "Ocwen's misconduct occurred at a time that Delk was grieving the loss of her brother[,]" and she cites to *Ragland v. U.S. Bank National Association*, 209 Cal. App. 4th 182 (Cal. Ct. App. 2012), for support. In *Ragland*, the plaintiff accused the defendant-lender of inducing her to miss her mortgage payment, refusing to accept payments, and then proceeding to foreclose on her residence. *Id*. at 204. The court found the defendant-lender's actions, if proven, were "so extreme as to exceed all bounds of decency in our society." *Id*. at 205.

I cannot say the same here. The parties dispute whether OLS retained its right to demand payment of the deferred balance, but even if it waived that right, its actions do not amount to the "extreme and outrageous" conduct necessary to sustain this tort. Moreover, the property was not Delk's primary residence, so it would appear that her attachment to it rested on potential financial benefit, not emotional involvement. Her conclusory allegations of "mental anguish and severe emotional distress" are insufficient, and the IIED claim is DISMISSED WITH LEAVE TO AMEND.

## XI.  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Under California law, a negligent infliction of emotional distress ("NIED") is a tort of negligence. *Spates v. Dameron Hosp. Assn.*, 114 Cal. App. 4th 208, 213 (2003). To state a cause of action for negligence, a plaintiff must show that: (i) the defendant had a duty of care to the plaintiff, (ii) the defendant breached the duty of care, and (iii) the plaintiff suffered damages proximately caused by the defendant's breach. *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (Cal. Ct. App. 2013). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (Cal. Ct. App. 1991). This general rule applies to loan servicers as well. *Castaneda v. Saxon Mortg. Servs., Inc.*, 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009). Moreover, a plaintiff cannot recover under a negligent infliction cause of action when defendant's "conduct resulted only in injury to property." *Ragland*, 209 Cal. App. 4th at 205.

17

1    Delk alleges that Ocwen should have known "that the failure to exercise due care in the
2 performance of their obligations and, specifically, the failure to allow [Delk] the benefits of the
3 SAM, would cause [Delk] to suffer severe emotional distress." FAC ¶ 108. Delk further asserts
4 that she suffered severe emotional distress as a direct result of Ocwen's refusal to allow the
5 deferred balance forgiveness and subsequent decision to rescind the assumption agreement. FAC
6 ¶109-10. She also offers the alternative argument that if Ocwen believes that it had a right to
7 demand payment of the deferred balance, that assumption arose from its negligence, as it does not
8 have a right under the agreement. Opp'n at 24. And she insists that if the language used by
9 McGarvey was not a direct lie, it certainly was not the whole truth. She argues that she was the
10 direct victim, and a duty existed based on the contractual relationship between the parties.

11    Delk has failed to state a claim for NIED. The *Ragland* court rejected the plaintiff's NIED
12 claim because she could not recover when defendant's conduct resulted only in injury to property,
13 and she could not prove a relationship giving rise to a duty of care. 209 Cal. App. 4th at 205. The
14 same holds true here.

15    Ocwen's motion to dismiss Delk's NIED claim is GRANTED. Delk is granted leave to
16 amend her complaint to provide more facts to state a claim.

## CONCLUSION

18    For the reasons stated above, I GRANT Ocwen's motion to dismiss Delk's claims against
19 OFC, and her claims for intentional infliction of emotional distress and negligence infliction of
20 emotional distress. Its motion is DENIED as to Delk's claims for breach of contract, breach of
21 covenant of good faith and fair dealing, promissory estoppel, unjust enrichment, fraud in the
22 inducement, unfair business practices, interference with contractual relations, and intentional
23 interference with contractual relations. Delk shall file an amended complaint, if any, within 20

days.

**IT IS SO ORDERED.**

Dated: August 21, 2017

William H. Orrick
United States District Judge